Fulton Light, Heat and Power Company, Plaintiff, *v.* Seneca River Power Company, Defendant.

Supreme Court, Oswego County, August 15, 1924.

Gas and electricity — injunction to restrain defendant's maintenance of plant in city of Fulton for distribution and sale of electricity within said city or exercising franchise in violation of Public Service Commission Law, § 68 — defendant maintains substation in city of Fulton for reduction of current for use on transmission lines running entirely over defendant's property — defendant in distributing electricity to one manufacturing plant and five private persons in city of Fulton, who are not parties, exercises no franchises to use property of city — maintenance of transforming substation not violation of Public Service Commission Law, § 68, requiring approval of public service commission prior to erection of electrical plant — motion for injunction denied for lack of jurisdiction — plaintiff's remedies are under statute and in first instance are exclusively with public service commission — plaintiff not entitled to equitable relief by reason of laches and failure to pursue remedy before public service commission — temporary injunction dissolved and complaint dismissed.

A temporary injunction restraining the defendant from maintaining in the city of Fulton a plant for the distribution and sale of electricity within the said city and from exercising any franchise for that purpose in violation of section 68 of the Public Service Commission Law, will be dissolved and plaintiff's action for a permanent injunction dismissed for want of jurisdiction, where it appears that the defendant maintains a substation in the city of Fulton merely for the reduction of current for use on its transmission lines which run entirely over its property; that in distributing and selling electricity to one manufacturing plant and five private persons in the city of Fulton, who are not parties, the defendant exercises no franchise to use the public property of the city; and that it in no way interferes with any franchise or other rights of the plaintiff, since the maintenance of its transforming substation is not in violation of

section 68 of the Public Service Commission Law requiring the approval of the public service commission prior to the erection of an electrical plant.

Plaintiff's remedies are the remedies prescribed by statute since whatever rights it claims are new rights established by the statute and the remedies therein prescribed must be followed, and in the first instance be deemed exclusive. The action constitutes an attempt to disregard the public service commission as to matters peculiarly within its jurisdiction by a direct appeal to the courts.

Moreover, the plaintiff is not entitled to equitable relief since it has been guilty of laches and has failed to pursue its remedy to a final conclusion before the public service commission.

ACTION for a permanent injunction restraining the defendant from maintaining a plant in the city of Fulton, N. Y., and from distributing electrical energy therefrom.

*George M. Fanning, Udelle Bartlett* and *Howard M. Whiting,* for the plaintiff.

*Oscar J. Brown* and *Eugene M. White,* for the defendant.

SMITH, J. The plaintiff invokes the injunctive powers of the court to restrain the defendant from maintaining in the city of Fulton, N. Y., a plant for the distribution of electricity, from selling, distributing or furnishing electricity in said city, and from the exercise of any franchise it owns or claims to own for that purpose within said city in violation of section 68 of the Public Service Commission Law,* and that the defendant be directed to remove all its poles, wires and other electrical equipment within the corporate limits of said city.

Both the parties to this suit are public service corporations organized under the Transportation Corporations Law, and both are subject to the provisions of the Public Service Commission Law. The plaintiff has a franchise which authorizes it to use the streets of the city of Fulton, N. Y., for the purpose of distributing electricity to the city and the citizens thereof. It is operating under this franchise. The defendant has no such operative franchise. The defendant has a plant for the production of electrical current at Baldwinsville, N. Y., and under franchises does municipal lighting for the villages of Baldwinsville, Phœnix, Hannibal, Cato, Meridian and Fair Haven; it furnishes electrical current to persons in the said villages and also in the towns of Lysander, Phœnix, Volney, Scriba and Granby; it supplies the Mexico Electric Lighting Company in the village of Mexico and the Northern Cayuga Power and Light Company. The above distribution is under franchises for towns or villages and is not here under consideration. It furnishes electricity for lighting, heating and power purposes.

* Short title changed to Public Service Commission Law by Laws of 1921, chap. 134.— [REP.

It covers in its distribution a wide territory and has between 1,500 and 2,000 customers, and uses between 5,000 and 6,000 horse power. In addition to producing electrical energy at its own plant, it purchases current generated at Niagara Falls.

In or about the year 1910 on land owned by it in the city of Fulton, N. Y., it or its predecessor built a substation for the purpose of reducing or transforming the current of the main transmission line which is operated at 33,000 volts having a frequency of sixty cycles per second, to a voltage of 6,600, with a frequency of twenty-five cycles per second, for use in this form on certain of its transmission lines. From this substation the Northern Cayuga Light and Power Company, ten miles away, and the village of Hannibal, eight miles away, are served. This station was constructed with the knowledge of the public service commission. It cost about $10,000, and this expenditure was subsequently recognized by the public service commission as a basis for the issue of new capital by the defendant.

The right of the defendant to distribute electricity outside of the city of Fulton, N. Y., is not questioned. It appears, however, that for some thirteen years the defendant or its predecessors has been furnishing electric current for light and power purposes to the North End Paper Company which operates a paper mill in said city, and that it furnishes electricity for lighting purposes to five private persons, two of whom are its own employees at the substation. In the distribution of the current to the North End Paper Company and to these few private customers, the defendant crosses no streets or public places, but its transmission lines run entirely over property which it owns or has acquired the right to use from the owners of it.

The plaintiff's plant transmits electrical current with a frequency of sixty cycles per second; the North End Paper Company equipment is for the use of current with a frequency of twenty-five cycles per second. The defendant also furnishes current for power purposes to the Victoria Paper Mills which requires a current with a frequency of twenty-five cycles. In order to reach this property it is necessary to use the public streets of the city, for which purpose the defendant has no franchise but the plaintiff has a franchise. To accommodate the Victoria Paper Mills Company, the plaintiff entered into an agreement with it, which recites fully the circumstances, the differences in current, frequency, the great expense that would be caused to the Victoria Paper Mills Company to change over its electrical equipment so as to use the current of the plaintiff, and which provides that the plaintiff will construct and maintain a transmission line to carry the current of

the defendant to the Victoria Paper Mills and limits the use of said line to any purpose excepting the transmission of.electricity from the defendant to the plant of the Victoria Paper Mills for its exclusive use. For the maintenance of this short transmission line the plaintiff receives compensation from the Victoria Paper Mills, and with the knowledge and consent of the plaintiff, the defendant is using this line to transmit current to the Victoria Paper Company; the plaintiff seeks no injunction herein restraining such distribution. It only seeks to restrain the maintenance of the substation by the defendant, and the distribution of electricity therefrom to the North End Paper Company and the few customers noted. The defendant in the distribution of this current is exercising no franchise to use the streets, parks or public places of the city of Fulton; it here occupies no public property.

The grounds upon which the plaintiff seeks an injunction are that the public service commission has never approved the distribution by the defendant of electricity for any purposes within the limits of the city of Fulton, N. Y., and that it never granted to the defendant permission to construct a transforming or reducing station within the limits of the city of Fulton. It is the contention of the defendant that for the distribution of electrical current which it makes within the limits of the city of Fulton, it is unnecessary for it to seek any franchise whatsoever from the city of Fulton for the reason that it does not make use of the instrumentalities within the control of the city as such, to wit, the streets or public places thereof; that exercising no rights of franchise, it in no way interferes with any franchise or other rights of the plaintiff, and that it has violated no provision of the Public Service Commission Law, and that plaintiff is not in position to maintain this action. Furthermore that this being a suit in equity there is an adequate remedy at law, and no basis has been shown from which any damage occasioned by the act of the defendants to the plaintiff can be calculated. Furthermore that the conditions complained of have been existing unrestrained openly and notoriously to the knowledge of the plaintiff for some thirteen years, and it should not now be permitted after such long neglect, to disturb existing and established conditions, thereby affecting valuable property rights.

From the statement of the questions involved, it is apparent that in order to attain an understanding or to be able clearly to state the principles of law and of equity applicable, it is necessary to inquire into the nature and functions of public service corporations, of franchises and of the public service commission in respect thereof as they affect public and private rights. The Public

Service Commissions Law became operative July 1, 1907; it worked a radical change in the conditions under which public service corporations had operated. Prior to this act there was competition between public service corporations leading to highly competitive conditions and to financial situations which impaired the integrity of securities issued to the public by such corporations. The history of the common law with respect to business and the operations of it shows a hatred of monopoly and of restraints upon trade, and of any effort to stifle freedom of competition, so that the Public Service Commissions Law worked a radical change from pre-existing conditions; it placed public service corporations under regulation, as to the issue of securities, as to rates to be charged the public and as to construction and maintenance of plants, of its creature, the public service commission. While such purpose is not openly declared, the natural consequence of the operation of the Public Service Commission Law, and, therefore, the policy of the legislation itself, is on the one hand to prevent ruinous competition between different public service corporations in a community, and on the other to protect the public from the danger of monopoly by public regulation. This result is effectuated by section 68 of the act (as amd. by Laws of 1921, chap. 134) which, so far as here applicable, provides as follows: " No  *  *  *  electrical corporation shall begin construction of  *  *  *  an electric plant without first having obtained the permission and approval of the commission.  *  *  *  No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised  *  *  *  without first obtaining the permission and approval of the  *  *  *  commission.  *  *  *  The commission  *  *  *  shall have power to grant the permission and approval whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service."

This section further provides that no municipality shall operate for other than for municipal purposes works for the manufacture of electricity for lighting purposes, without a certificate granted by the commission.

Theretofore and now franchises to use public facilities were granted by municipalities. Before the Public Service Commissions Law there was no restraint upon such grants; now before becoming operative franchises must in effect receive the approval of the public service commission. A franchise is a special privilege conferred by government upon an individual or corporation which

**34**

**590** FULTON LIGHT, HEAT & POWER CO. *v.* SENECA RIVER P. CO.

Supreme Court, August, 1924. [Vol. 123]

does not belong to the citizens of the country generally. *Bank of Augusta* v. *Earle*, 13 Pet. 519, 595. The reason for the issuance of a franchise to a public service corporation is that in the operation of its business such a corporation requires the use of public streets and places; otherwise there would be no necessity for a franchise, provided the right of way were purchased or leased; inherently there is no power to interfere with the operations of private enterprise. The use of public property is, however, essential to the life of public service corporations, and through this necessity is in large measure secured to the state the power of regulation.

There is, however, another source of power to control public service corporations, and that is the reserved power of the state over its creatures, to wit, corporations created by and existing under its authority. Public service corporations are creatures of the state and within limits constitutional in character are subject to the legislative power which in this instance finds expression in the Public Service Commissions Law. This is made possible through the amendment to the State Constitution adopted in 1846 to meet the situation created by the decision in *Dartmouth College* v. *Woodward*, 4 Wheat. 518, which held that a charter issued to a corporation is a contract which may not be impaired, where there is no power reserved by the state to modify it. N. Y. Const. art. VIII, § 1. The extent of control does not permit confiscation of property or property rights once established; for instance, a franchise granted by a municipality would be a property right which if granted before the Public Service Commissions Law, and if granted and made effective through the approval of the public service commission, could not be destroyed. The tendency of a proper administration of this law is to develop a monopolistic condition with the public service commission standing as the representative and protector of the public interest against unjust exactions of or improper conduct of public service corporations. Representing such interests, the public service commission, subject in some contingencies to judicial review, has certain statutory duties to perform and certain statutory powers to exercise to protect such interests.

In controlling competition in this way, and in setting up a commission to protect the public against the dangers of monopoly, the legislature created a new set of rights and a new set of duties unknown to the common law; the statute provided the remedies for cases of violation of its provisions and these remedies in my opinion must be followed and in the first instance must be deemed exclusive. The very nature of the rights created and the duties imposed impel this conclusion. Attention has been called to no decisions in respect of the operations of public service commissions

or corporations which change or affect the long-established rule of the courts in this state that where a new right unknown to the common law has been created and the remedy has been provided by statute, that remedy is exclusive. To hold otherwise in respect of either municipal ordinances or regulations under the Public Service Commission Law would be to open the flood gates of litigation to every individual whim, instead of having the matters of difference settled in the first instance at least by and through appeal to the body charged in the statute with the exercise of the new powers and the performance of new duties.

Having in mind the foregoing general principles, consideration may be given to their application to the facts of the instant case. The plaintiff in any event has no interest in or right to complain of the actions of the defendant in distributing electrical current to persons or corporations or municipalities in those territories where it is operating under franchises, or in all the territory served by the defendant, excepting the corporate limits of the city of Fulton. The location of a transforming station is immaterial. The evidence does not disclose, but it undoubtedly was located with regard to economical considerations; possibly with relation to where the current from Niagara Falls was received; possibly with relation to economy of distance, or with respect to the territory that this particular kind of current would best accommodate. Of course a transformer could have been installed at each center of distribution, but this would have entailed unnecessary expense, not only of construction but of maintenance. The defendant had the right to distribute in the territory it was serving exclusive of the city of Fulton. No question is raised as to that. Its purpose to construct this transforming station in the city of Fulton was brought to the attention of and known to the public service commission prior to the construction. For the construction of this station it needed not to borrow money and needed not to ask for the issuance of securities for such purpose. Some years later it did make application to the public service commission for the issuance of additional securities to a considerable amount, in which application the expenditures for the construction of this transforming station in Fulton were included at about $10,000, and capitalization was authorized by the public service commission on account of the expenditures there made. No attack is or could here be made upon the issuance of these securities. No effort is here made to restrain the issuance of them in so far as they have been issued; they stand as securities issued by this defendant under authority of the public service commission.

But the plaintiff contends that the defendant did not comply

with the provisions of section 68 of the Public Service Commission Law. Without here considering the question as to whether the plaintiff has any standing in court to raise this question, and of course in so far as the service of the defendant is to that territory where it has franchises, the plaintiff would have no such right, and, therefore, in this case in my judgment, has no such right, yet let us consider the merits of the question. Said section 68 provides as follows: "No gas corporation or electrical corporation shall begin construction of a gas plant or electric plant without first having obtained the permission and approval of the commission."

Under "definitions" the act (§ 2, subd. 12) defines "electrical plant" as including "all real-estate, fixtures and personal property operated, owned, used or to be used for or in connection with or to facilitate the generation, transmission, distribution, sale or furnishing of electricity for light, heat or power; and any conduits, ducts or other devices, materials, apparatus or property for containing, holding or carrying conductors used or to be used for the transmission of electricity for light, heat or power."

This is a definition of an "electric plant," and of course refers to the construction of the plant. The plant of the defendant was already constructed at Baldwinsville, N. Y. This plant was rightfully in existence. Transformers are not mentioned but of course would be assumed to be a part of the plant, just as a pole would be assumed to be part of a plant. Transformers are instruments of common use, and it would be no more absurd to hold that, every time a public service corporation changed a pole or the location of it, it is necessary to make application to the public service commission on the ground that it was beginning the construction of a plant, than to hold that the installation of a transformer was the beginning of the construction of a plant. The purpose of this provision is clear, and it is that before an electrical plant is constructed, permission and approval of the public service commission must be obtained in order to have it settled at the very beginning before obligations are incurred and expenditures made, that the corporation has the right not only to construct, but to maintain and operate the plant.

Attention has been called to the case of *People ex rel. N. Y. Edison Co. v. Willcox*, 207 N. Y. 86. In that case approval of a proposed issue of securities was sought under section 69 of the Public Service Commission Law, where the right to construct an electric plant had not first been established. We are now citing this case as to the question decided therein on the merits. The prevailing opinion says: "The purpose and intent of the law forbids the commissions to authorize the issue of stock and bonds

under section 69 * * * when prescribed requirements and conditions precedent to the right of the applicant to construct and operate a plant * * * have not been fulfilled or complied with and when, perhaps, the property to be acquired or constructed may never be acquired or constructed and the bonds or stock, the issue of which is applied for, have no substantial security to rest upon. A contrary conclusion would make the authorization and avouchment of the commissions a bait and a trap for ensnaring the investing public. * * * The commission cannot, under this language, order the issue of the securities for the purposes mentioned, unless it is satisfied that the applicant has the present and absolute right to accomplish the uses for which the securities are authorized. Problematical uses or purposes do not necessitate or require funds or capital for their execution. The commission may, perhaps, be thus satisfied from its own records, of which, of course, it may take judicial notice. Otherwise it must require allegation and proof." It appeared that the records of the commission did not show the existence of the rights of the applicant, and under those circumstances it was held that before there could be an authorization of securities, the right to operate the plant for the construction of which the securities were to be issued must be established.

It is apparent, even if by any stretch of the imagination it could be held that the construction of a transformer was the beginning of the construction of an electrical plant, that the case cited has no application for the reason that therein there was a direct attack upon the right, and in the instant case not only is there no such attack, but the right actually existed at the time and the electrical plant existed at the time, and years before the application for the issuance of securities was made. So that in so far as the application of the plaintiff for an injunction restraining the maintenance of this transforming substation is concerned, it must be denied upon the merits.

The only possible basis of any right of action which the plaintiff can have is in respect of the electrical current which is distributed by the defendant to parties within the limits of the city of Fulton. It already appears that in making this distribution the defendant is exercising no franchise, nor is it necessary for it to have or to exercise a franchise as its short lines of distribution to the North End Paper Company and to the few houses run on its own or on private property. At the outset inquiry is pertinent, what right of the plaintiff has been invaded? There is nothing in the Public Service Commission Law which prevents the operation within the limits of the city of Fulton of another electrical corporation provided it could obtain a franchise from the city of Fulton, and

38

**594** Fulton Light, Heat & Power Co. *v.* Seneca River P. Co.

Supreme Court, August, 1924.                    [Vol. 123

receive the approval of such franchise by the public service commission, and permission from it to operate thereunder. It is quite conceivable that such a situation might arise in the operation of electrical plants in the various municipalities throughout the state where for one reason or another an electric corporation holding the franchise is unable to meet the demands of the community, or even where it is unable to meet the particular demands of a particular part of the community. The whole question of course becomes one of public·policy, to be passed upon, approved or disapproved by the public service commission in the interest of the public. The electrical corporation operating in the locality would be an interested party with right to appear and to be heard at the hearing, but the right of approval or disapproval by the public service commission is not dependent upon any inherent right of the operating electrical corporation, but rather upon the question of sound public policy of which the public service commission is the judge. It might well be that the legal rights of the operating corporation might be invaded, which would be entitled to receive the protection of the courts. The point is that an electrical corporation has no inherent right to a monopoly of a local situation.

It is the contention of the defendant that exercising no franchise, and for the purpose of such distribution as it makes requiring no franchise from the city of Fulton, it is unnecessary to make any application to the public service commission for approval or permission, because there is no franchise necessary and, therefore, nothing to be approved or disapproved; this view finds judicial approval in the case of *Niagara, Lockport & Ontario Power Co.* v. *Bridges,* 131 App. Div. 921, unanimously affirming the decree of the Special Term. The plaintiff in that case strung its wires across the highway, its poles being located upon its own property. Mr. Justice Benton presiding at Special Term wrote as follows: " I conclude under the evidence in this case that plaintiff has carefully constructed its lines with due regard to the safety of the public, that they are upon their own property, and such use of its own property is no encroachment upon nor obstruction of the highway; that it is not a nuisance affecting the rights of the traveling public; that it is duly incorporated and is within its corporate powers in the use of its transmission line throughout the town of Perinton; and that it is not required by law to obtain the consent of the town board as prerequisite to stringing its wires across the highway therein." The public service commission has down to its latest decision adhered to the views as stated by Mr. Justice Benton.

But attention has been called to the case of *People ex rel. Oneonta L. & P. Co.* v. *Pub. Serv. Comm.,* 180 App. Div. 32. The relator

was incorporated under a special act, and the act of incorporation provided: " Such corporation shall not be permitted to exercise any of the powers conferred by this act within the limits of any town, village or city, without securing the consent of the local authorities thereof." Clearly it had no authority to operate in any locality without complying with the express provisions of its very act of incorporation. It contended that in occupying private lands at Oneonta Plains it did not begin construction of an electric plant within the meaning of section 68 of the Public Service Commission Law. The court in holding that the relator was restricted according to the terms of its charter and of its incorporation and also with respect to its claim as to the use of private lands, used this language: " The proposition that the construction and operation of a lighting system by an electrical corporation is beyond the supervision of the Public Service Commission so long as the electric current is sold and distributed upon private property contravenes some of the most important purposes for which the Public Service Commission was created and given supervision of this class of public utilities, viz., the protection of the public from improper and dangerous construction, and from exorbitant charges, and the protection of the corporation itself from disastrous competition. That the Legislature had the power to prescribe the conditions upon which a corporation to which it gave existence might operate cannot be questioned. Neither can the right of the Public Service Commission to exercise authority over public transportation corporations be doubted."

It is unnecessary here to pass upon the question whether application to the public service commission to distribute electricity where no franchise is required, is necessary or not. Certainly in the cited case the relator by the very terms of its charter was in the wrong. Even if the power does exist in the public service commission, and if it exists, it must exist by legal inference and not by express provision of the statute, to control the operations of a corporation where no public franchise is exercised, still it is only the public service commission which can exercise that control, not the courts. In the cited case the act reviewed was the act of the public service commission, which having the power to deny, had likewise the power to grant the right.

There is no inherent right of the plaintiff in this action which has been invaded. Therefore, it follows that this court has no jurisdiction to act in the premises, nor has it any jurisdiction to act for the reason, already announced, that if there were any right created by the act itself in the plaintiff, or if the defendant has in distributing this electricity in the city of Fulton violated any

**596** FULTON LIGHT, HEAT & POWER CO. *v.* SENECA RIVER P. CO.

Supreme Court, August, 1924. [Vol. 123

provision of the statute, the remedies are the remedies prescribed by statute, because the rights or duties are new rights or duties established by the statute, and the remedies therein prescribed must be followed, and in the first instance be deemed exclusive. Penalties are provided, forfeitures are provided, duties are imposed upon the public service commission and rights of petition to the public service commission necessarily exist. None of these have been invoked either at the instance of the plaintiff or put in operation at the instance of any other taxpayer, nor upon the initiative of the public service commission itself. To hold otherwise would lead to dire consequences generally. The public service commission exists for the very purpose of passing upon these questions, and if the courts are to assume jurisdiction in the first instance over questions arising under statutes creating new rights with remedies provided, especially where as in the Public Service Commission Law an administrative agency is set up, a confusion will result which will seriously interfere with the orderly administration of the duties imposed by statute upon the commission and of justice itself.

In this particular case the defendant has a contract entered into some fourteen years ago to furnish electrical current with a frequency of twenty-five cycles per second to the North End Paper Company which it is obvious that the plaintiff was not at the time of the contract and may not at present be in a position to furnish. The North End Paper Company and these other individuals receiving service are entitled to their day in court, and they are not parties here. What they might show we do not know; taking into consideration the facilities of the public service corporations involved, an injunction in this case might work great and irreparable damage to the North End Paper Company, which for these many years has rested secure under its contract for power with this defendant; we do not know what burden of expense would be imposed upon it, what the cost to the plaintiff if it were to comply with its requirements, nor do we know whether the plaintiff is equipped to make the service required. These and many other questions would be raised before the public service commission in order that it might determine what was the best policy in the premises, and if it should be found that there was no question of public interest involved, there are grave doubts as to the power of the commission to pass upon the questions at all. But assuming that it has the power, its exercising of it would not involve the final determination of questions of legal right but rather of questions of sound policy.

On the grounds suggested the plaintiff must **fail.**

Attention has been called to several cases which it is urged establish the right of the plaintiff to maintain this action, but careful examination of each one of these cases shows that the court has actually made no real departure from the rule to which it has adhered without interruption down to the present time. The cases referred to are: *People ex rel. N. Y. Edison Co.* v. *Willcox*, 207 N. Y. 86; *People ex rel. Oneonta L. & P. Co.* v. *Pub. Serv. Comm.*, 180 App. Div. 32; *Brooklyn City Railroad Co.* v. *Whalen*, 191 id. 737; affd., 229 N. Y. 570; *Huff* v. *City of New York*, 202 App. Div. 425; *Kingsbridge Railway Co.* v. *City of New York*, 204 id. 369.

In *People ex rel. N. Y. Edison Co.* v. *Willcox, supra,* the prevailing opinion (and it is well here to note that the decision even on this point in this case was a four to three decision, and that the dissenting opinion of Chief Judge Cullen on this point is written with a power of expression and a logic which is impressive) holds that the public service commission, before whom the application for the issue of securities was made, having consented that the relator might intervene, that its intervening carried through not only the hearing before the public service commission, but gave to the relator the right to appeal from its decision, and that, therefore, the relator was properly before the court. That is all that was decided in that case, and I assume the reason for that decision was not that the relator was entitled to appear and to be heard as to the issuance of securities but that under the statute it was entitled to appear and to be heard as to the right of the petitioner to operate at all within a district in which it was operating, and that the issuance of the securities not having been based upon a previous holding as to the right to operate that it was entitled to be heard on that question because a question of the right itself was directly involved. Furthermore the matters involved were those which arose on a hearing before the public service commission whose determination was directly attacked by the appeal, and they did not arise as here in an attempt by the plaintiff to assert a right which if it exists must be through the act of a body to which it does not here appeal. This action constitutes an attempt to disregard the public service commission as to matters peculiarly within its jurisdiction by a direct appeal to the courts.

The case of *People ex rel. Oneonta L. & P. Co.* v. *Pub. Serv. Comm., supra,* was likewise a proceeding in which the act of the public service commission was directly attacked, and to which it was a party.

The case of *Brooklyn City Railroad Co.* v. *Whalen, supra,* was likewise a direct attack upon the act of a public official, raising directly the question as to whether the city of New York had the

**598** Fulton Light, Heat & Power Co. *v.* Seneca River P. Co.

Supreme Court, August, 1924. [Vol. 123

power to operate bus lines. It went to the very essence of the power of the city itself, and there never has been a time when either a taxpayer or one having a special interest, could not make direct attack through the courts upon the acts of public officials.

The case of *Huff* v. *City of New York, supra,* was of the same character, involving the power of the city to operate buses, and is an attack by a citizen upon the power of the city itself and was brought to determine the question whether officials were properly acting under the terms of the charter. The court in announcing its decision stated as follows: " The action may be maintained by a common carrier of passengers with whom the bus lines come in competition, or by a taxpayer for an injunction to restrain an illegal official act and to obtain a judgment for the loss to the city occasioned by such an illegal act of the officials, or by any citizen and resident of the city to secure the abatement of a nuisance in the public streets. (*People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390.) "

In *Kingsbridge Railway Co.* v. *City of New York, supra,* we have likewise a bus line case involving the question of authority of the city, in which the question now raised was not discussed but in which the plaintiff procured judgment.

In all the cited cases the public body having charge of the matter involved in the action was a party to the action. For the above reasons the complaint should be dismissed.

But aside from all else, this is an action in equity in which an appeal is made to equitable considerations. One of the fundamental conditions for invoking the favorable consideration of a court of equity is that one seeking the equity must proceed with promptness; if one has rights, he must not sleep upon these rights if he would appeal to equity, for the reason that after long sleeping upon rights, others may have been led into courses of action on the basis of assumed rights, under conditions which would make it most inequitable for a court of equity to intervene. It is now fourteen years since this little distribution of electrical energy in the city of Fulton by the defendant commenced. It knew about it at the time; it suffered the defendant to develop its substation and its distribution lines to the North End Paper Company, and the North End Paper Company to enter into the contract for the use of and, during all these years, to receive power under this contract with the defendant. If the considerations which have been urged on the merits of the questions here involved could be disregarded, still I feel that on account of all the circumstances and the long delay, the plaintiff is not in a position to invoke the equity powers of this court, but should be relegated to such legal

rights by petition to the public service commission or otherwise as it may have.

On the question of laches it is interesting to know that in a complaint filed by the Fulton Light, Heat and Power Company, the plaintiff herein, against the Oswego River Power Transmission Company, a predecessor of the defendant herein, with the public service commission, the complainant sought an order from the public service commission restraining the Oswego River Power Transmission Company from furnishing power to the Victoria Paper Mills Company, and to the North End Paper Company, on the ground that such distribution was made without the permission and approval of the public service commission as required by section 68 of the Public Service Commission Law. This petition was made under section 74 (as amd. by Laws of 1921, chap. 134) which provides the remedy in case of the violation of the law, and the complaint was for the purpose of having the public service commission start the proper action to restrain the predecessor of the plaintiff as to the very matter here involved. Upon the hearing in that matter no evidence was presented bearing upon the complaint against the predecessor of the plaintiff for serving the North End Paper Company. But the complaint was only pressed as to the Victoria Paper Mills as to which the commission held that although the predecessor of the plaintiff then had a franchise from the city of Fulton, it had not received the approval of the public service commission as required by section 68, but it was given the right to make application for such permission before a date fixed.

As to the North End Paper Mill, the commission in its decision stated: " The questions which can be raised regarding the service to the North End Paper Company are distinct and different from the questions raised as to the service to the Victoria Mills, and if an adjudication thereon is asked from the commission, it is expected that respective counsel will serve the commission with briefs on matters of law and upon the interpretation of section 68 raised by the facts disclosed. There is no dispute upon the facts, and they are all recorded at the present time in the record. The commission has communicated with the attorney for the complainant (the plaintiff herein) who has advised the commissionn that complainant is willing to leave out of consideration the service to the North End Paper Mill Company." The memorandum of the commission ends with this sentence: " The complainant should not be foreclosed, however, from pressing its complaint as to the North End Paper Mill if it so desires, and to that end the order entered should postpone this part of the case for such action as complainant may advise it desires to take." This decision was

rendered December 3, 1912. *Fulton L., H. & P. Co.* v. *Oswego River P. T. Co.,* 3 P. S. C. Rep. (2nd Dist.) 482, 491.

Why did not the plaintiff pursue its remedy then to a final conclusion before the proper body? In any event it is very late in coming here.

For the foregoing reasons, that no legal right of the plaintiff has been invaded, that adequate remedy is provided by the statute for any wrong, that the plaintiff may not in the first instance approach the courts for relief of the character sought, and that it has been guilty of laches, the application for a permanent injunction herein must be denied.

Let the temporary injunction be dissolved and the complaint of the plaintiff be dismissed, with costs. Defendant will prepare findings of fact and conclusions of law in accordance with the views above expressed, to be agreed upon by the parties, and if not agreed upon to be settled upon five days' notice.

Decreed accordingly.